## In re Incorporation of Linfield Borough.

*Henry M. Brownback*, for petitioners.

*Ralph F. Wismer* and *Franklin L. Wright*, for remonstrants.

KNIGHT, J.—The village of Linfield is pleasantly situated on the Schuylkill River in Limerick Township, this county.

The industries of the village consist of a pipe mill, employing from 150 to 200 hands, and a cold storage plant with ten employees.

Time was when a flourishing distillery was among the important industries of the village, but the distillery, like unto the dodo and the wild pigeon, has passed away, leaving its sad and desolate buildings mute reminders of the vicissitudes of time and public opinion.

Among its commercial activities the village has four stores, a garage, barber shop and a hotel. It also maintains a volunteer fire company. Seven hundred and two people live in the village, 343 of whom are taxables and ninety-two of whom are freeholders. All of these freeholders except five have joined in a petition to this court praying that the village may be incorporated as a borough.

The proposed borough covers 638 acres of land, has 4½ miles of road and contains 166 dwelling houses.

No opposition to the proposed borough comes from within, but a remonstrance has been filed signed by 183 freeholders and taxables of Limerick Township who oppose the grant of a charter to the village.

The petitioners assign the following reasons for desiring to break the political bonds that have so long associated them with the old Township of Limerick:

1. The condition of the roads in the village.
2. The lack of curbing and paving and the necessity of establishing grades.
3. The need of water for fire protection.
4. The general good of the people.

The force of the first three reasons is shattered by the undisputed fact that the petitioners have all of these improvements within their grasp under the township law as it exists at the present time.

If these freeholders who are unanimous for incorporation are equally sincere in their demand for curbing, paving and water for fire protection, these

things can be obtained by petition to the supervisors under the existing law. The evidence shows that they have never used the means at hand to obtain the improvements they desire.

If grades are desired, the supervisors have authority under section 1040 of the Township Code of July 14, 1917, P. L. 840, to establish location and width of sidewalks upon the request of any land owner, and under the Act of July 7, 1919, P. L. 732, the supervisors may establish grades irrespective of requests from property owners.

True, one of the petitioners testifies that he asked a supervisor to give him a grade line and the request was ignored. Even if this be true, the request was a very informal one, not made to the board of supervisors but to one of its members.

About one mile of road within the limits of the proposed borough is a state highway which is maintained by the State and will be so maintained whether the charter be granted or not: Act of May 16, 1929, P. L. 1775.

The condition of the township roads in the village is fair and equal to the condition of the roads in the remainder of the township.

Those who oppose the grant of a charter rest their case upon the following reasons:

1. The incorporation of the borough will deprive the township of one-fifth of its road taxes, while it relieves it of the care of only about one-twentieth of the township roads.

2. The incorporation of the borough will retard the growth and improvement of the township and place an undue burden of taxation upon the inhabitants of the remainder of that municipality.

3. Incorporation is unnecessary, inadvisable and inexpedient.

There is merit in these objections to the grant of a charter to Linfield. The people of Linfield are interested in the maintenance of the township roads, especially those leading to their village, and in the event of incorporation these could only be kept up by substantially increasing the taxation upon the remainder of the township.

To take from the township the taxes derived from the village of Linfield would place an unfair burden upon the inhabitants residing in the remaining portions of the township without a corresponding advantage to the residents within the proposed borough.

The location of the streets of the village, the fact that the houses are scattered, the large amount of farm land included within the lines of the proposed municipality, and the total assessment of $317,000, all militate against the expediency and advisability of incorporation.

We have not touched upon the school situation, for, as we understand the law, if a charter were granted it would only have the effect of creating an independent school district composed of the borough and the township until such time as a new school district is approved by the State Council of Education: Act of April 24, 1929, P. L. 642.

Independent school districts are not favorites of the law: Incorporation of Lehman Borough, 4 Pa. C. C. Reps. 37, 41.

The strongest argument in favor of incorporation is the fact that the freeholders of the proposed borough are unanimously in favor of it.

"The question of necessity or expediency of incorporating a village and adjacent territory into a borough does not depend so much upon the will of a majority of the freeholders residing outside the limits of the proposed borough, or upon the unanimous consent of those residing within the proposed lines, as it does upon the fact that the advantages to the whole people, as a

community, will overbalance the disadvantages:" Prospect Park Borough, 166 Pa. 502.

After viewing the proposed borough and carefully considering the evidence produced before us, we have come to the conclusion that any advantage to be gained by incorporation is overbalanced by the obvious disadvantages to the whole people of Limerick Township as a community.

We can appreciate that our decision will be a keen disappointment to the petitioners, but with the wide powers now given to townships of the second class, we are fully convinced that, in the long reach of the future, the interests of the people of Linfield will be best served if their village continues politically a portion of Limerick Township.

And now, Aug. 19, 1929, the application of freeholders of the village of Linfield for incorporation of the village into a borough is refused and the petition dismissed.

From Aaron S. Swartz, Jr., Norristown, Pa.